UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| **DELTRIC DARNELL SMITH,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| v. | ) No. 20 CV 2868 |
| | ) |
| **OFFICER BRANDON FRAZIER,** | ) Judge Rebecca R. Pallmeyer |
| | ) |
| **Defendant.** | ) |

## MEMORANDUM OPINION AND ORDER

After his arrest and detention in June 2019, Plaintiff Deltric Darnell Smith brought this *pro se* civil rights lawsuit under 42 U.S.C. § 1983 against Defendant Officer Brandon Frazier of the County Club Hills Police Department. Plaintiff proceeds on three causes of action under the Fourth Amendment: (1) arrest and detention without probable cause, (2) excessive use of force, and (3) failure to provide adequate medical care. Defendant has moved for summary judgment, arguing that the record shows he had probable cause to arrest Plaintiff, that Defendant was not the source of any excessive force, and that Plaintiff received prompt medical care for the injuries he incurred on the night of his arrest, and was not harmed by any negligent delay. For the reasons that follow, the motion is granted as to the alleged failure to provide medical care claim and otherwise denied.

## BACKGROUND

In the early morning hours of June 19, 2019, Plaintiff Deltric Darnell Smith called the police after his father hit him with a picture frame. When the police came to the scene, the tables turned: the officers ended up arresting Plaintiff for disorderly conduct. Defendant Brandon Frazier, one of the arresting officers, allegedly slammed Plaintiff onto a concrete driveway, breaking two of his ribs. Before recounting the relevant facts of this case in greater detail, the court addresses a few preliminary procedural and evidentiary issues concerning documents in the record.

I.   **Preliminary Issues**

   A.   **Plaintiff's Noncompliance with Local Rule 56**

This court's Local Rules establish procedures for filing and opposing a motion for summary judgment. See Local Rule 56.1 (requiring parties to submit statements of facts organized into "short numbered paragraphs" and including specific citations to the record). District courts are entitled to strictly enforce local rules. See Flint v. City of Belvidere, 791 F.3d 764, 767 (7th Cir. 2015); Cady v. Sheahan, 467 F.3d1057, 1061 (7th Cir. 2006).

In this case, Defendant adhered to the procedure, including, as required by Local Rule 56.2, serving Plaintiff with a "Notice to Pro Se Litigant Opposing Motion for Summary Judgment" [61-3]. That notice provided Plaintiff with instructions concerning the relevant local rules and warnings regarding the consequences of non-compliance. Plaintiff responded with an unsigned one-page document titled "Response to Statement of Facts" [65]. In that document, Plaintiff states that he was arrested for disorderly conduct after calling the police on his father. He states he was thrown to the ground (he does not say by whom) and suffered two broken ribs as a result. He also claims that his name was slandered in the papers and that he was abused by the Country Club Hills Police. He additionally references an unrelated incident in which he was accused (falsely, he states) of setting the Country Club Hills police station on fire. Plaintiff's Response does not comply with the requirement that he cite record evidence in support, and unless his statements are supported by the record, the court will disregard them. See Friend v. Valley View Cmty. Unit Sch. Dist. 365U, 789 F.3d 707, 710 (7th Cir. 2015) (finding no abuse of discretion when district court deemed a statement of additional facts "deficient" because plaintiff "failed to cite or submit evidence in support of nearly all of the additional facts he asserted").

Because Plaintiff did not comply with Local Rule 56.1, the court will accept Defendant's statements of facts as true to the extent that they are supported by the record. See Curtis v. Costco Wholesale Corp., 807 F.3d 215, 218 (7th Cir. 2015); Smith v. Lamz, 321 F.3d 680, 683 (7th Cir. 2003). But this does not warrant automatic judgment in Defendant's favor. The court

views the record in the light most favorable to Plaintiff—the nonmoving party—and draws all reasonable inferences in his favor. See Keeton v. Morningstar, Inc., 667 F.3d 889, 884 (7th Cir. 2012). Defendant continues to bear the burden of persuasion and must demonstrate that he is entitled to judgment as a matter of law. Raymond v. Ameritech Corp., 442 F.3d 600, 608 (7th Cir. 2006).

### B. Defendant's Noncompliance with 28 U.S.C. § 1746

Defendant himself has not fully complied with the court's requirements. The document he has submitted, labeled "affidavit" [57-D], is neither notarized nor dated. Whether or not there is a motion to strike, the court must review statements of material fact and eliminate from consideration any assertions that are not supported by record evidence. See Johnke v. Espinal-Quiroz, No. 14-cv-6992, 2017 WL 3620745, at *2 (N.D. Ill. Aug. 23, 2017) (Dow, J.). Parties often submit affidavits as evidence in support for summary judgment, but affidavits are admissible only if sworn before an officer authorized to administer an oath, such as a notary public. Id. (citing Pfeil v. Rogers, 757 F.2d 850, 859 (7th Cir. 1985)). Officer Frazier's "affidavit" does not meet this requirement.

The document also does not qualify as an unsworn declaration under 28 U.S.C. § 1746, which permits admission of unsworn declarations if made "under penalty of perjury" and verified as "true and correct." 28 U.S.C. § 1746(2). See Sheikh v. Grant Reg'l Health Ctr., 769 F.3d 549, 551 (7th Cir. 2014) (affidavit that is not notarized or witnessed may still be admissible "provided it complies with the formalities required by 28 U.S.C. § 1746"); DeBruyne v. Equitable Life Assur. Soc. of U.S., 920 F.2d 457, 471 (7th Cir. 1990) (affidavit that does not subject declarant to the penalties for perjury could not be considered at summary judgment).

Officer Frazier's "affidavit" is signed under the following statement:

> I, Officer Brandon Frazier, under penalties as provided by law, pursuant to Section 1-1-9 of the Code of Civil Procedure, the undersigned certifies that the statement [sic] set forth in this instrument are true and correct, except as to matters therein stated to be on information and belief and as to such matters the undersigned certifies as aforesaid that she [sic] verily believes the same to be true.

(Frazier Aff. [57-D] at 128.)

"Section 1-1-9 of the Code of Civil Procedure" appears to be a reference to Section 1-109 of the Illinois Code of Civil Procedure, the Illinois equivalent of § 1746. *Johnke*, 2017 WL 3620745, at *2 (N.D. Ill. Aug. 23, 2017) (citing *Trapaga v. Cent. States Joint Bd. Local 10*, No. 05 C 5742, 2007 WL 1017855, at *3 (N.D. Ill. Mar. 30, 2007) (Pallmeyer, J.)). Numerous courts, however, have found the certification provided for in Section 1-109 does not meet the requirements of § 1746. *See id.* at *2–3 (collecting cases). These courts reason that while the Illinois statute subjects the declarant to penalties under state law for materially false statements, those penalties do not apply to documents filed in federal court. *Id.*

Officer Frazier's document does not meet all the requirements of § 1746 for an additional reason: the document is not dated. *See id.* at *3; *see also Kalra v. United States*, No. 12-CV-3154, 2013 WL 1749385, at *3 (N.D. Ill. Apr. 23, 2013) (striking statement lacking specific date and collecting similar cases). The court declines to consider Defendant's factual statements that rely on Officer Frazier's "affidavit."

**II.    Relevant Facts**

The following facts primarily come from Defendant's Statement of Facts to the extent it is supported by record evidence. The court also sets forth relevant portions of the deposition testimony of Plaintiff, his mother, and his niece as necessary to flesh out the record. *See* FED. R. CIV. P. 56(c)(3). Defendant's father, a key witness, could not be deposed for health reasons. (*See* Def.'s Mem. in Supp. of Mot. for Summ. J. [58] at 6 n.1.)

On June 19, 2019, Plaintiff was 33 years old and resided at a house that his parents, Delores and Varnell Smith, Sr., rented at 16949 Old Elm, Country Club Hills, in Cook County, Illinois. (Def.'s SOF [57] ¶ 1.) The house is a tri-level with an adjacent driveway. (*Id.* ¶ 2.) Off the driveway is a one-step landing to the front door, which opens on to the living room. (*Id.*)

On the night of June 18, 2019, Plaintiff had consumed alcohol and marijuana. (Def.'s SOF [57] ¶ 4.) Delores, who had seen her son intoxicated several times over the years, testified that

4

when he returned to the Smith household during the daylight hours of June 18, Plaintiff was already drunk. (*Id.*) Plaintiff's niece, Ashaylyn Smith, then 18 years old, finished a shift at Popeye's Chicken and came home between 7:00 and 8:00 p.m. that evening. (*Id.* ¶ 5.) Like Delores, Ashaylyn also had past experiences interacting with Plaintiff when he was intoxicated, and Ashaylyn, too, observed that he was drunk that night. (*See id.* ¶ 6.) For his part, Plaintiff testified that he had worked cutting grass until around 9:00 p.m. on June 18 and did not drink earlier that day. (Pl.'s Dep. [57-B] at 73:9–74:5.[1]) While he admitted to drinking "[a] beer or two" and smoking "[a] joint" of marijuana between 9:00 p.m. and midnight, he testified that he did not feel impaired that night. (*See id.* at 76:4–20, 85:5–12.)

During the early morning hours of June 19, 2019, Plaintiff and his father got into a heated argument (no one remembers the reason), which led to a physical altercation. (Def.'s SOF [57] ¶ 7; Dep. of Delores Smith [57-A] at 39:11–13; Pl.'s Dep [57-B] at 85:20–86:9; Dep. of Ashaylyn Smith [57-C] at 37:20–38:8.) Delores described her son as "drunk" and "talking too much," leading up to the incident. (Def.'s SOF [57] at ¶ 8; Dep. of Delores Smith [57-A] at 28:24–29:3.) During the argument, Plaintiff's father told him to leave the house. (Def.'s SOF [57] ¶ 8.) But Plaintiff did not leave, and he contends he could not leave because his father had blocked the door.[2] (*Id.*; Pl.'s Dep. [57-B] at 93:4–23.) Their argument escalated, and Plaintiff's father hit him with a picture frame in the back or shoulder. (Def.'s SOF [57] ¶ 9.) When this initial strike occurred, Plaintiff, Varnell, and Ashaylyn were in the living room. (*Id.* ¶ 10.) Delores was upstairs but, when she heard the commotion, came downstairs to intervene. (*Id.*) Varnell then hit Plaintiff with the picture frame a second time, striking the right side of his body. (*Id.* ¶ 11.)

---

[1] The page numbers for deposition testimony refer to the internal pagination of the deposition transcripts.

[2] There is disputed evidence on this score: In addition to Plaintiff's account, Ashaylyn Smith testified that Varnell blocked the door after telling Plaintiff to leave, but Delores testified that her husband did not prevent Plaintiff from leaving. (*Compare* Dep. of Ashaylyn Smith [57-C] at 42:14–43:5 *with* Dep. of Delores Smith [57-A] 28:16–23.)

In response, Plaintiff announced that he was going to call the police, and Varnell urged him to do so. (*Id.* ¶ 12.) Plaintiff called the Country Club Hills 911 dispatch center, and Ashaylyn heard him tell the dispatcher that he was a "hostage." (*Id.* ¶¶ 13, 14.) Plaintiff denies having told the dispatcher that he was being held hostage, but testified that he in fact felt like a hostage when his father told him to leave the house but nevertheless blocked the door. (*See* Pl.'s Dep. [57-B] at 93:4–94:14, 94:20–95:9.)

It took about six or seven minutes for the police to arrive. (Pl.'s Dep. [57-B] at 99:1–11; Dep. of Ashaylyn Smith [57-C] at 49:21–24.) While the family waited, the argument and physical aggression calmed down. (*See* Dep. of Ashaylyn Smith [57-C] at 50:19–51:1.) It is not disputed that the June 19 episode was not the first encounter between the Smith family and the Country Club Hills Police Department. In his adult years, Plaintiff had been arrested 42 times. (Def.'s SOF [57] ¶ 17; Pl.'s Dep. [57-B] at 158:8–15.) Some of Plaintiff's prior interactions with the police resulted from his parents calling and asking them to remove Plaintiff from their home when he was intoxicated so he could "sleep it off." (Def.'s SOF [57] ¶ 21; *see* Dep. of Delores Smith [57-A] at 38:17–24, 39:23–40:16.) But whereas in the past Plaintiff's parents had called the police regarding domestic disturbances, this time it was Plaintiff who made the call. (*See* Def.'s SOF [57] ¶ 19).

When the police arrived, Plaintiff and his parents went to the front door. (*See id.* ¶ 15.) Ashaylyn stayed in the living room, where she had a clear view of the front door. (*Id.*) She testified that Plaintiff appeared intoxicated when the police arrived. (*Id.* ¶ 16.) Two officers knocked at the door: one Hispanic male and one white female. (*Id.* ¶ 18; Pl.'s Dep. [57-B] at 109:2–14; Dep. of Ashaylyn Smith [57-C] at 71:5–8.) Defendant, Officer Brandon Frazier, is African American, and no one testified to an African American officer being at the door when the police first arrived.[3]

---

[3] Plaintiff has not named any individual officer other than Defendant Frazier in this case. Plaintiff named the Country Club Hills Police Department as an additional Defendant, but the court dismissed and terminated the police department from this suit on June 15, 2020 [5].

6

Accounts of what happened next differ. Ashaylyn testified that Delores and Varnell told the police they wanted Plaintiff removed from the house and put in the "drunk tank." (Def.'s SOF [57] at ¶ 21.) Delores did not clearly recall the details of what happened when the police arrived at her door, but testified that she went upstairs once the police arrived. (Dep. of Delores Smith [57-A] at 37:13–38:6, 38:5–6.) Delores also stated that she did not know if her husband had asked the police to remove her son from the home, but she acknowledged that doing so would have been consistent with past practice. (Def.'s SOF [57] ¶ 21; *see* Dep. of Delores Smith [57-A] at 38:17–24, 39:23–40:16.)

Plaintiff testified to a more detailed version of the initial conversations he and his family members had with the police. At his deposition, Plaintiff recounted that he was the first person to talk to the police when they arrived. (Pl.'s Dep. [57-B] at 109:15–17.) He recalled that initially only a Hispanic male officer and white female officer were at the door, though eventually two African American male officers joined them. (*Id.* at 109:11–14.) He testified that he and his father each spoke to different officers. (*Id.* at 111:9–11.) Plaintiff recalled speaking to a Hispanic male officer and an African American male officer—who, according to his testimony, may or may not have been Defendant—and believed his father spoke with the white female officer. (*Id.* at 111:12–24.) One of the officers Plaintiff spoke to asked Plaintiff if he wanted to press charges against his father, and he replied that he did not. (*Id.* at 110:11–15.) The officers told Plaintiff that if they had to come back out to the house again, they would arrest him. (*Id.* at 110:13–15.) Plaintiff testified that, as the police were leaving, Defendant, from his squad car, called Plaintiff a "bitch," and Plaintiff cursed back at him from the doorway of the house. (*Id.* at 121:24–16.)

The police then returned to the front door and arrested Plaintiff, though accounts of how the police took him into custody diverge. Defendant largely relies on Ashaylyn's testimony (and to a certain extent the testimony of Delores Smith and Officer Frazier's stricken affidavit). Ashaylyn stated that the Hispanic officer "grabbed" Plaintiff and "pulled" him out of the house, though she did not recall seeing the officer handcuff him. (Def.'s SOF [57] ¶ 23; Dep. of Ashaylyn

7

Smith [57-C] at 58:22–60.21.) Ashaylyn recalled that Plaintiff objected to being removed from the home and told the police that he was not drunk, and that he himself had called police for help. (*See* Dep. of Ashaylyn Smith [57-C] at 58:4–21.) Ashaylyn remained on the couch when the police escorted Plaintiff out of the house. (*See id*. at 62:16–24.) While she could not see what was going on outside, Ashaylyn heard Plaintiff screaming and heard Delores objecting to the way the police were handcuffing him. (*See id.* at 62:16–24, 65:13–17.) Ashaylyn then got up from the couch and watched as the Hispanic male officer and white female officer escorted Plaintiff down the driveway. (*See* Def.'s SOF [57] ¶ 26; *see* Dep. of Ashaylyn Smith [57-C] at 63:13–24, 69:2–13.) She did not see the officers put Plaintiff into the squad car (Dep. of Ashaylyn Smith [57-C] at 65:6–8), and she did not see Plaintiff in the custody of anyone other than the Hispanic male officer and white female officer (Def.'s SOF [57] ¶ 27).

Plaintiff's mother, contrary to Ashaylyn's recollection, testified that she did not observe any interactions between her son and the police, nor did she hear any screaming and yelling as he was escorted to a squad car. (*Id.*; *see* Dep. of Delores Smith [57-A] at 44:1–7.)

Plaintiff offers yet a different version of events. He testified that, after he and Defendant Frazier swore at each other, the officers returned to the house and knocked on the door, which his mother opened. (Pl.'s Dep. [57-B] at 123:17–19.) As soon as Delores opened the door, according to Plaintiff, the Hispanic officer and Defendant "slung [him] to the ground and threw [him] on to the concrete." (*Id.* at 126:1–8.) Specifically, he averred that Defendant Frazier and the Hispanic officer grabbed him and slammed him onto the driveway, dug their knees into his back and side, and then "threw" him into a police car. (*Id.* at 126:4–127:3.) Plaintiff contends he was not resisting when the officers took him into custody. (*Id.* at 131:8–22.)

In moving for summary judgment, Defendant focuses on only a small part of Plaintiff's testimony, where he explicitly acknowledges that the Hispanic officer used force, but does not expressly mention Officer Frazier:

8

> It happened so fast. I know for a fact the Hispanic guy was on my back, on my knees and my back hitting me and they was kneeling on me. And I'm telling them I couldn't breathe. Like, Bro, you all hurting me. He laughed. He's like take that shit like a man.

(Def.'s SOF [57] ¶ 24; *see* Pl.'s Dep. [57-B] at 125:14–19.)

Plaintiff acknowledges that he was arrested on a charge of disorderly conduct. (*See* Pl.'s Resp. [65].) That statute provides, in relevant part, that a person commits disorderly conduct when he knowingly "[d]oes any act in such unreasonable manner as to alarm or disturb another and to provoke a breach of the peace." 720 ILCS 5/26-1.

Plaintiff was placed into Defendant's squad car and taken to the Country Club Hills Police Station. (Def.'s SOF [57] ¶ 28; Pl.'s Dep [57-B] at 143:8–11.) En route, he complained of pain and asked Defendant to summon an EMT. (Def.'s SOF [57] ¶ 28; *see* Pl.'s Dep. [57-B] at 143:1–13.) Plaintiff reiterated his request for medical attention to the officer who processed him at the police station. (Pl.'s Dep. [57-B] at 143:14–24.) Plaintiff was in custody for one to two hours before paramedics, whom the police called at some point, arrived at the station and brought Plaintiff to South Suburban Hospital. (*Id.* at 144:6–145:9.) Plaintiff does not know whether it was Officer Frazier or someone else who called the paramedics. (*Id.* at 145:2–6.)

The paramedics took Plaintiff to the emergency room, where he remained for a few hours. When asked if he was hostile to the hospital staff, Plaintiff acknowledged that he "probably was a little bit obnoxious and loud" in the emergency room because he was in pain. (*Id.* at 148:3–9.) He complained to the doctor of left elbow and rib pain. (*Id.* at 148:10–13.) Plaintiff was discharged to police custody with what he described as "mildly displaced" rib fractures. (*See* Pl.'s Dep. [57-B] at 152:5–8.) Defendant, by contrast, refers to the fractures as "non-displaced." (*See* Def.'s SOF [57] ¶ 30.) Neither party has submitted any medical records.

On August 2, 2019, about six weeks later, Plaintiff was again treated at the South Suburban Hospital emergency room for an unrelated injury, and his x-rays from that date showed no fracture. (*Id.* ¶ 31.) Doctors told Plaintiff his rib fractures had healed. (*See id.*)

9

**DISCUSSION**

On summary judgment, the court must view the record in the light most favorable to the nonmoving party and grant the motion if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Gupta v. Melloh*, 19 F.4th 990, 997 (7th Cir. 2021); FED. R. CIV. P. 56(a). The party seeking summary judgment bears the initial burden of showing the grounds for his motion. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the moving party demonstrates the absence of a disputed issue of material fact, "the burden shifts to the non-moving party to provide evidence of specific facts creating a genuine dispute." *Carroll v. Lynch*, 698 F.3d 561, 564 (7th Cir. 2012). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In this posture, the court construes facts in the light most favorable to the nonmoving party and draws all legitimate inferences in favor of that party. *Nat'l Athletic Sportswear, Inc. v. Westfield Ins. Co.*, 528 F.3d 508, 512 (7th Cir. 2008). "A court's role is not to evaluate the weight of the evidence, to judge the credibility of witnesses, or to determine the truth of the matter, but instead to determine whether there is a genuine issue of triable fact." *Id.*

I.  **Unlawful Arrest and Detention**

Officer Frazier contends that he and the other responding officers had probable cause to arrest Plaintiff based on the complaints of Delores and Varnell. Probable cause would defeat Plaintiff's claim of unlawful arrest and detention.

The Fourth Amendment protects individuals from unreasonable searches and seizures. U.S. CONST. amend. IV.[4] An officer has an absolute defense to a claim of unlawful arrest or

---

[4] The Fourth Amendment also governs a claim of unlawful pretrial detention. *Williams v. Dart*, 967 F.3d 625, 632 (7th Cir. 2020). Plaintiff has not brought forth any evidence regarding any detention subsequent to his arrest and testified that he was released on a personal recognizance bond shortly after he was brought back to the police station from the hospital. The criminal charges against him were subsequently dismissed. (*See* Pl.'s Dep. [57-B] at 156:22–157:6.) The court will therefore focus solely on the circumstances of Plaintiff's arrest.

detention if probable cause existed for the seizure. *Martin v. Marinez*, 934 F.3d 594, 598–99 (7th Cir. 2019); *Abbott v. Sangamon County*, 705 F.3d 706, 713–14 (7th Cir. 2013). Probable cause to support an arrest exists if the "totality of the facts and circumstances known to the officer at the time of the arrest would warrant a reasonable, prudent person in believing that the arrestee had committed, was committing, or was about to commit a crime." *Abbott*, 705 F.3d at 714; *Gonzalez v. Village of W. Milwaukee*, 671 F.3d 649, 655 (7th Cir. 2012). This belief does not have to rise to the level of certainty; it need only be reasonable. *Seiser v. City of Chicago*, 762 F.3d 647, 654 (7th Cir. 2014); *see also Gaddis v. DeMattei*, 30 F.4th 625, 630–31 (7th Cir. 2022) ("The officer's belief need not be correct or even more likely true than false, so long as it is reasonable.") (internal citation and quotation omitted).

Probable cause "is a fluid concept that relies on the common-sense judgment of the officers based on the totality of the circumstances." *Thayer v. Chiczewski*, 705 F.3d 237, 246–47 (7th Cir. 2012) (internal citation and quotation omitted); *United States v. Mounts*, 248 F.3d 712, 715 (7th Cir. 2001) (describing probable cause as a "practical, nontechnical conception") (quoting *Illinois v. Gates*, 462 U.S. 213, 231 (1983)). This is an objective inquiry made from the perspective of a reasonable person in the position of the officer, considering the facts known to the officer at the relevant time. *Thayer*, 705 F.3d at 247; *Carmichael v. Village of Palatine*, 605 F.3d 451, 457 (7th Cir. 2010). An officer's subjective beliefs and motivations are irrelevant. *See Gibbs v. Lomas*, 755 F.3d 529, 537 (7th Cir. 2014).

Whether an officer is authorized to make an arrest typically depends on state law. *Michigan v. DeFillippo*, 443 U.S. 31, 36 (1979). As noted above, Plaintiff was arrested for disorderly conduct, an offense described under Illinois law as "any act [performed] in such unreasonable manner as to alarm or disturb another and provoke a breach of the peace." 720 ILCS 5/26-1(a)(1). To amount to disorderly conduct, and individual's actions must (a) be unreasonable; (b) disturb or alarm another; and (c) threaten to provoke or actually provoke a breach of the peace. *Kies v. City of Aurora*, 156 F. Supp. 2d 970, 984–85 (N.D. Ill. 2001). The

11

conduct need not occur in public. *Abbott*, 705 F3 at 717. "The unreasonableness of the conduct depends on both the conduct itself and the circumstances in which the conduct occurs." *Id.* (citing *Biddle v. Martin*, 992 F.2d 673, 677 (7th Cir. 1993)). Courts have described disorderly conduct as "loosely defined" and a "highly fact-specific inquiry" that is meant to guard against "an invasion of the right of others not to be molested or harassed, either mentally or physically, without justification." *People v. McLennon*, 2011 IL App (2d) 091299, 957 N.E.2d 1241, 1249, ¶ 30 (quoting 720 ILCS Ann. 5/26-1); *see Biddle*, 992 F.2d at 677 ("Disorderly conduct has never had a precise definition; the types of conduct that may be disorderly conduct almost defy definition.") (internal citation and quotation omitted). The court may determine whether probable cause existed as a matter of law only if the underlying facts claimed to support probable cause are not in dispute. *Gonzalez v. City of Elgin*, 578 F.3d 526, 537 (7th Cir. 2009).

Officer Frazier argues that Plaintiff was impaired and agitated; made false representations to the 911 dispatcher, including that he was being held hostage and that he had a broken arm; and insisted upon trespassing in his parents' home. But an assessment of the facts and circumstances known to Officer Frazier necessarily would rely in large part on his stricken affidavit. There is no evidence in the record, outside the stricken affidavit, as to what the 911 dispatchers documented or reported to police. Defendant argues that Plaintiff's father, Varnell, wanted to press charges against his son. (*See* Def's Mem. in Supp. of Mot. for Summ. J. [58] at 8.) But there is no evidence that Varnell signed a complaint against his son, nor any details concerning the substance of his complaint to police beyond a request that Plaintiff be removed from the home and put "in the drunk tank."

Further, Plaintiff, in his deposition testimony, disputed much of Defendant's characterization of the facts. He paints himself as a victim of domestic violence. He denied feeling impaired and denies having told the police dispatcher he was being held hostage (although he felt like one because his father had blocked the door). He also denies Defendant's assertions in the stricken affidavit that he gave the dispatcher the wrong address for the family home (*see*

12

Pl.'s Dep., [57-B] at 85:5–12, 94:24–95:14, 99:12–100:12, 193:9–19), and that he left but then attempted to re-enter the home during his interaction with the officers (*id.* at 128:18–129:10). As to this final point, Defendant notes Plaintiff's allegation in his complaint that he was trying to get back inside the home at the time of his arrest—an allegation that conflicts with his deposition testimony. (*See* Def.'s Mem. in Supp. of Mot. for Summ. J. [58] at 9 (citing Pl.'s Compl. [7] at 5).) But while this inconsistency bears on Plaintiff's credibility, it is not a basis for granting summary judgment to Defendant given the factual disputes set forth above.

Plaintiff acknowledges arguing with officers and using profanity, but even a loud argument with police officers, in and of itself, does not constitute disorderly conduct. *Cf. Kies*, 156 F. Supp. 2d at 985 ("Although arguing with a police officer may not by itself be a violation, other circumstances may lead to the conclusion that an individual's behavior does constitute disorderly conduct."); *see Biddle*, 992 F.2d at 677 (acknowledging that arguing with police officer, even in a loud, offensive manner, may not by itself constitute disorderly conduct, but may qualify "depending on the circumstances and the argument's tendency to create public disorder"); *Idris v. Conway*, No. 12 C 6271, 2014 WL 4244222, at *6 (N.D. Ill. Aug. 27, 2014) (Kendall, J.) ("Illinois courts have consistently held that arguing with a police officer, even if done loudly, or with profane or offensive language, will not in and of itself constitute disorderly conduct."). Given the state of the factual record, particularly the questions of fact as to Plaintiff's conduct and behavior leading up to the arrest, the court cannot find that probable cause existed to arrest Plaintiff as a matter of law.

## II.   Excessive Force

The Fourth Amendment requires that officers use only objectively reasonable force when making an arrest. *See Williams v. Brooks*, 809 F.3d 936, 944 (7th Cir. 2016); *Abbott*, 705 F.3d at 724 (Fourth Amendment prohibits officer from using greater force than necessary to make an arrest). "The reasonableness of the force used depends on the totality of the facts and circumstances known to the officer at the time the force is applied." *Abbott*, 705 F.3d at 724. Courts consider factors including the severity of the crime, whether the arrestee poses an

13

immediate threat to the safety of officers or others, and whether the suspect actively resists arrest or attempts to flee. *Id.*; *Johnson v. Scott*, 576 F.3d 658, 660 (7th Cir. 2009).

Defendant argues that accepting Plaintiff's version of events as true, it was an Hispanic officer, not Officer Frazier, who threw Plaintiff to the ground. But in so doing, he relies on only a snippet of Plaintiff's testimony in which he stated that the Hispanic officer was "on his back." (*See* Def.'s Mem. in Supp. of Mot. for Summ. J. [58] at 12 (citing Def.'s SOF ¶ 23).) Defendant acknowledges that Plaintiff testified that Officer Frazier also put his knee in Plaintiff's back, but argues, "this would have been secondary." (*Id.* at 12.) Defendant does not explain what "secondary" means in this context, and a fair reading of Plaintiff's testimony is that both Officer Frazier and the Hispanic officer used force.

As set forth above, Plaintiff testified that he was slammed to the ground and thrown into a police car despite the fact that he was not resisting. This raises a question of fact as to whether any force used against Plaintiff was reasonable, and Defendant makes no argument in his opening brief regarding the reasonableness of the force used. Defendant contends in his reply brief that any force used in taking Plaintiff into custody was "justified and reasonable" (*see* Def.'s Reply in Supp. of Mot. for Summ. J. [66] at 5), but he cites no undisputed evidence to that effect, and, in any event, arguments raised for the first time in a reply brief are waived. *Carroll v. Lynch*, 698 F.3d 561, 564 n.2 (7th Cir. 2012). This record does not support summary judgment, especially in light of the Seventh Circuit's recognition "on many occasions that summary judgment as a matter of law in excessive force cases should be granted sparingly." *Gupta v. Melloh*, 19 F.4th 990, 996 (7th Cir. 2021) (quoting *Abdullah v. City of Madison*, 423 F.3d 763, 773 (7th Cir. 2005)).

### III. Medical Treatment

To survive summary judgment on a Fourth Amendment medical care claim, Plaintiff must present evidence that Defendant's response to his medical needs was objectively unreasonable, and that the response caused him harm. *Horton v. Pobjecky*, 883 F.3d 941, 953 (7th Cir. 2018).

Courts examine four factors to determine whether an officer's response to a detainee's medical needs is objectively unreasonable: (1) the notice the officer has of the detainee's need for medical attention; (2) the seriousness of the need; (3) the scope of the required treatment; and (4) any countervailing police interests, such as the need to prevent the destruction of evidence or other police interests. *See Sallenger v. City of Springfield*, 630 F.3d 499, 503 (7th Cir. 2010). "The Fourth Amendment requires reasonableness, not immediacy." *Id.* at 504.

Viewing the record in the light most favorable to Plaintiff, Officer Frazier had notice of Plaintiff's medical need. Plaintiff did receive medical treatment, however, and Plaintiff has offered no evidence that a delay of an hour or two in obtaining treatment for injuries described as elbow pain and mild rib fractures caused him harm. Plaintiff cannot survive summary judgment because he failed to bring forward "verifying medical evidence" in the form of expert testimony or "non-expert evidence" that would allow a factfinder to determine whether the delay caused him additional harm. *See Ortiz v. City of Chicago*, 656 F.3d 523, 535 (7th Cir. 2011). Courts have granted summary judgment to defendants in similar cases. *See Allen v. City of Chicago*, No. 15 C 7702, 2019 WL 3003025, at *5 (N.D. Ill. July 10, 2019) (Kocoras, J.) (rejecting argument that plaintiff was constitutionally entitled to be taken to hospital immediately following use of force, rather than being first taken to police station); *Neely v. Garza*, No. 15 C 407, 2017 WL 959014, at *9 (N.D. Ill. Mar. 13, 2017) (Lee, J.) (granting summary judgment where there was no evidence that a three- to four-hour gap between plaintiff's arrival at police station following alleged use of force by officers and medical evaluation caused him any additional harm); *Wasko v. Herman*, No. 1:05-CV-280, 2008 WL 150604, at *8 (N.D. Ind. Jan. 14, 2008) (Springmann, J.) (finding wait of 17 hours for treatment of a broken wrist was not objectively unreasonable where the plaintiff's symptoms did not indicate a need for immediate treatment and the delay caused the plaintiff no harm). On this record, Defendant is entitled to summary judgment on Plaintiff's Fourth Amendment medical care claim.

**CONCLUSION**

For the foregoing reasons, Defendant's motion for summary judgment [56] is granted as to Plaintiff's Fourth Amendment medical care claim and denied as to his claims of false arrest and excessive use of force. A telephone status hearing is set for December 13 at 2:00 p.m. The parties are encouraged to discuss settlement.

ENTER:

Dated: November 4, 2022

_____
REBECCA R. PALLMEYER
United States District Judge